CITIZENS' MUTUAL INSURANCE COMPANY ET AL. *v.* G. W. FOS-
TER ET AL.

1. CHANCERY PRACTICE. *Certain allegations inconsistent with purpose of bill. Fraud, when immaterial. Case in judgment.*

F. & Co., a commercial firm, made an assignment to one S. for the benefit of creditors. S. appointed F. his agent to collect the assets. F. did collect such assets and bought real estate therewith, taking the deeds in his own name. S. then filed a bill to have the property sold and the proceeds devoted to the purposes of the assignment. This suit was compromised by C., the wife of F., paying six thousand dollars to S. and the costs of the suit, and assuming the individual debts of F., and S., as assignee, releasing to her his claim to the property in question. There was a consent decree to this effect. F. afterward caused the legal title to the property to be conveyed to his wife. Thereupon certain creditors of F. filed a bill against F. and C. to subject this property to the payment of their claims, alleging that the compromise was fraudulently induced by F. to hinder, delay, and defraud his creditors, and that F. furnished the entire consideration for the conveyance of the property to his wife. *Held,* that since the bill does not seek to vacate the consent decree, and the validity of the compromise is essential to the relief asked, the question of fraud in the procurement of that decree is immaterial, the sole question being whether F. or his wife furnished the consideration for the compromise.

2. SAME. *Charge of fraud. Based on conveyance of legal title by trustee.*

In the case above stated, F. when he held the legal title to the property in question was trustee for S., assignee, and, as creditors of the firm of F. & Co. could not subject such title to the payment of their claims, they cannot predicate a charge of fraud on the fact that F. has conveyed it to his wife.

3. SAME. *Consideration. Evidence of. Case in judgment.*

In the above stated case, it was shown that the brother of F. lent the wife a part of the money paid to S.; that B., a person interested in having the matter compromised, lent her another portion thereof, and that the balance was derived from rents accruing from the property in question. *Held,* that consideration thus paid was the money, not of F., but of his wife, and cannot be subjected to his debts.

APPEAL from the Chancery Court of Clay County.

HON. F. A. CRITZ, Chancellor.

G. W. Foster was a member of the two firms of Sims, Foster & Co., and Sims, Foster & Ivy, commission merchants. These firms

having failed, made an assignment of all their assets to one Peter Starke, assignee, for the benefit of creditors, and therein provided that all individual debts of the several partners should first be paid out of the individual assets of each. Starke, the assignee, appointed Foster his agent to collect together the assets. Foster having collected together a large amount of such assets, with the proceeds purchased a lot and large hotel thereon in the town of West Point, and two fine prairie plantations in Clay County, taking the deeds thereto in his own name. He then executed deeds of trust on the two plantations in favor of his son, W. R. Foster, his sister, Miss A. C. Foster, and his nephew, J. C. Foster, to secure to them certain debts which he, G. W. Foster, claimed to owe them. Starke, discovering this, filed two bills to have these deeds of trust cancelled and the entire property sold and the proceeds of the sale devoted to the purposes of the assignment. G. W. Foster, after fiercely litigating the two suits, induced Starke to enter into a compromise of the same. G. W. Foster had previously been given a power of attorney to transact all business of every kind for his wife, Mrs. C. H. Foster. The compromise agreement between Starke and Foster was that Mrs. C. H. Foster should pay Starke six thousand dollars and the costs of the rents, and should assume all the individual debts of her husband, and that Starke, as assignee, should release to her his interest in the property above described. A consent decree was entered up to this effect. The six thousand dollars were paid to Starke, and the conveyance made by him to Mrs. Foster, and the costs of the suit were also paid as agreed. G. W. Foster afterward caused the legal title to the property referred to be conveyed to his wife.

Thereupon the Citizens' Mutual Insurance Company and others, creditors of Sims, Foster & Co., filed this bill against G. W. Foster, Mrs. C. H. Foster, J. M. Foster, and the beneficiaries in the deeds of trust above referred to, setting out the facts already stated, and alleging that these several deeds of trust were fraudulent and without consideration, and given to hinder, delay, and defraud creditors; that the compromise of these suits was forced upon the assignee Starke by the fraud of Foster with the purpose of hinder-

ing, delaying, and defrauding his creditors. The bill then proceeds to charge that the entire consideration for the compromise, to wit, six thousand dollars and the costs of the suits, was paid by G. W. Foster out of his own funds and not by his wife, and that Foster had caused the release by Starke and the conveyance of the legal title of the property by the holders thereof to be made to his wife, Mrs. C. H. Foster, to hinder, delay, and defraud the creditors of G. W. Foster. The bill prays that the deeds of trust be declared null and void ; that Mrs. C. H. Foster be declared to hold the legal title merely as trustee for her husband, G. W. Foster ; that an account be taken of Foster's indebtedness to complainants, and that this property be sold and the proceeds devoted to the payment of complainant's claims against Foster.

Mrs. C. H. Foster answered the bill denying that the money paid Starke, the assignee, in pursuance of the agreement for a compromise of the suits, was paid by her husband out of his own funds, and alleging that it was her own ; that five thousand dollars of this money she borrowed from her husband's brother, J. M. Foster, and secured him by a deed of trust on the " hotel " property above referred to ; that some of the money came from the rents and profits of the plantations in contest ; that the balance necessary was furnished her by one J. P. Billups, because, seeing that the compromise with Starke was about to fail, he feared that he would be involved in a tedious litigation by such failure, he having already been made a party to the suits.

As to all the other matters charged in the bill, she pleaded that they had already been settled by the compromise and consent decree referred to in the bill, and that such matters were now *res judicata.* J. M. Foster answered that he had lent Mrs. Foster the money in good faith. The several other defendants, except G. W. Foster, pleaded the compromise and *res judicata.*

The proof is sufficiently set out in the opinion of the court. The Chancellor denied the complainants the relief asked, and they appealed.

*Fred. Beall,* for the appellants.

Appellants were not parties to the litigation between Starke,

assignee, and G. W. Foster, and had no voice in that litigation, nor did they take any part in the settlement thereof; and, as they never consented to anything Starke did, they cannot be bound thereby. *Kerrison, Assignee,* v. *Stewart et al.,* 93 U. S. 155; Bigelow on Estoppel 82 *et seq.;* Bigelow on Estoppel 98, note 5; *Champion* v. *Coyle,* 54 Miss. 695; *Yandell* v. *Pugh,* 53 Miss. 295; *McPike* v. *Wells,* 54 Miss. 136.

There was no actual adjudication of anything in the suits between Foster and Starke; those suits were settled outside of court by the parties, and the decree entered was a decree by consent.

The law is that to sustain a plea of *res judicata* there must have been an actual adjudication—a determination, in fact, by the court. *Arden* v. *Patterson,* 5 John. Ch. 49; 1 Dan. Ch. Pldg. & Prac. 659 *et seq.;* Story's Eq. Pldg., § 793.

This case turns, I think, more on questions of fact than of law, for every legal question involved is elementary. It is a question of fraud or no fraud—and an important fact to be always kept in the mind of the court, that none of the allegations of fraud are denied by any of the defendants, except that Mrs. C. H. Foster denies the fraud charged as to the transaction with J. M. Foster.

*Fred. Beall* also argued the case orally.

*Barry & Beckett,* for the appellees.

The *amount of the consideration* paid to Starke is not in issue or controversy. The question is, who paid it? We ask the court to notice specially that the bill does not seek to set aside the sale by Starke, but only the deed to Mrs. Foster, under the allegation that G. W. Foster *paid the consideration,* and that Mrs. C. H. Foster, his wife, holds as trustee for him. The bill alleges that the sale was made in good faith by the assignee, Starke, but insists that G. W. Foster paid the consideration, and that his wife holds but the legal title in trust for *him,* not Starke.

We must, then, put out of view that G. W. Foster once owned the property, or that Starke was assignee. It is not disputed that the assignment conveyed the property to Starke, nor that his deed to Mrs. Foster conveyed it *away from him.* The contention is, and is alone, that while the deed from Starke did convey the property

away from Starke, yet that it only conveyed the legal title to Mrs. C. H. Foster, because G. W. Foster *paid the consideration.*

We ask the court to keep this in mind, and the solution of the case is not difficult.

The object of the bill in this case is not to get the property back into the assignment, but to reach and subject it as the property of G. W. Foster, because he paid the consideration.

*R. C. Beckett,* of counsel for the appellees, argued the case orally.

COOPER, C. J., delivered the opinion of the court.

If the bill in this case had been exhibited to vacate the consent decree made in the proceeding in which Starke, assignee, etc., was complainant and the defendants hereto defendants, it would then have been material to allege and show the frauds and deceitful practices by which it was procured. But the complainant does not now seek to annul the compromise under which Starke parted with his title to the property in controversy. That compromise is the foundation of the claim which the complainant asserts. If it is set aside and the *status quo ante* restored, the result would be that the title to the property which is sought to be subjected to complainant's demand would be vested in Starke, assignee for the benefit of creditors generally, as provided by the deed of assignment, and this would be an insuperable obstacle to the relief prayed. But complainant does not seek to do this; the sole purpose of its bill is to procure a decree affirming that the title acquired by the compromise was vested in Mrs. Foster in fraud of the rights of the creditors of her husband. If this be true, it is sufficient to support the bill; if it be not true, the complainant cannot subject the property, no matter how great may have been the fraud practiced upon Starke.

The deed of assignment passed whatever title G. W. Foster before that time had had in the assets which were invested in the lands, and though G. W. Foster had taken the title in his own name he held the same in trust for Starke, the assignee. It does not, therefore, appear that Mrs. Foster acquired anything save the bare legal title from G. W. Foster, and since his creditors could

not have subjected that to the satisfaction of their debts, it was no fraud upon them that he conveyed it to his wife. The real vendor to Mrs. Foster was Starke, and, as we have said, it is not proposed to subject his title to sale by the present proceeding. The sole ground, therefore, on which the complainant can have the relief prayed, is that G. W. Foster paid the purchase-money to Starke, in consideration of which the conveyance was made to Mrs. Foster. This is the material fact to be established by the complainant to entitle it to relief. This fact is not proved, but is disproved by the testimony adduced. A part of the purchase-money was paid out of the rents accruing on the lands conveyed by Starke. These rents did not belong to G. W. Foster but to Starke, the assignee, and by the compromise passed to Mrs. Foster. This was, therefore, her money, and not G. W. Foster's. Another portion of the money paid was advanced by a brother of G. W. Foster to Mrs. Foster. Now, it is evident that the creditors of G. W. Foster never had any sort of right to subject this money to the payment of their claims. The lender was under no liability to pay these debts, and the creditors were not defrauded, and could not be, by the fact that he loaned the sum to the wife of his insolvent brother. It may be that but for this insolvency G. W. Foster would himself have borrowed the money and would have taken the title to himself; but we know of no principle of law which gives to a creditor the benefit of a trade made by another, but which would have been made by the debtor but for his insolvency. Mr. Foster's abilities as a financier may be great (the record shows them to be of no ordinary character), but creditors have no lien on them and no right to complain that the debtor devotes them to the benefit of his wife. The remainder of the purchase-money was paid by one Billups, who was, or thought that he would be, benefited by the compromise, but the money paid by Billups was not the money of G. W. Foster, and its investment in the lands did not defraud the complainant. Since the complainant has shown no right to subject the lands to the payment of its claim against G. W. Foster, it is immaterial whether the mortgages which rest upon it are valid or invalid. Complainant has no interest in this question.

*The decree is affirmed.*